UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIANNA RANDLE,

                              Plaintiff,          Case # 19-CV-6797-FPG

v.

                                                          DECISION AND ORDER

CONDUENT INC., et al.,

                              Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Brianna Randle brings this action for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYSHRL")[1] against Conduent, Inc. ("Defendant"), Continuum Global Solutions, LLC ("Continuum"), and Benny Ridgeway ("Ridgeway").[2] ECF No. 1. Plaintiff alleges she experienced sexual harassment while employed by Defendant and was unfairly terminated for complaining about the sexual harassment. ECF No. 1 at 4.

Defendant now brings a Motion to Compel Arbitration (ECF No. 7). Plaintiff brings a Motion for Default Judgment (ECF No. 6) and a Motion to Appoint Counsel (ECF No. 17). For the reasons that follow, Defendant's Motion to Compel Arbitration is GRANTED; Plaintiff's Motion for Default Judgment is DENIED; and Plaintiff's Motion to Appoint Counsel is DENIED.

## BACKGROUND

On June 13, 2018, Plaintiff completed an online employment application (the "Employment Application") for a customer care associate position with Defendant. ECF No. 7-4

---

[1] On the Court-provided *pro se* complaint form, Plaintiff did not check any box indicating under what statute(s) she brings her claims. However, based on the nature of the allegations and construing her Complaint "to raise the strongest arguments that [it] *suggest[s]*," *Triestman v. Fed. Bureau of Prisons*, 470, F.3d 471, 474 (2d Cir. 2006) (emphasis in original; quotation and citation omitted), the Court considers her claims under Title VII and the NYSHRL.

[2] Continuum and Ridgeway have yet to be served. ECF Nos. 10, 11. The Court addresses service of process in Part IV, *infra*.

1

at 24-29.  On June 14, 2018, Plaintiff completed documents to officially accept her position, though she disputes that she filled them out.  *See* ECF No. 7-5 at 3; ECF No. 18 at 1-3.  These documents consisted of an (1) offer acknowledgement form, ECF No. 7-4 at 31; (2) acknowledgment of application of employment, ECF No. 7-4 at 33-35; and (3) agreement to be bound by the Dispute Resolution Plan ("DRP"), ECF No. 7-4 at 37-40 (collectively the "Onboarding Documents").  The DRP requires resolution of all workplace disputes through arbitration.  *See* ECF No. 7-4 at 37.

Plaintiff began working for Defendant on June 26, 2018.  ECF No. 1 at 2; ECF No. 7-4 at 24.  Plaintiff alleges that her supervisor, Ridgeway, sexually harassed her on "just about a daily basis" between July 10 and July 26, 2018.  ECF No. 1 at 3, 5.  Plaintiff described Ridgeway's "unwelcome sexual approaches" as including rubbing her hand, "inappropriately" holding her hand "for a long time," grabbing her waist, and making "sexual grunts" at her.  ECF No. 1 at 10.  On July 25, 2018, Plaintiff reported the harassment, which other employees had witnessed.  ECF No. 1 at 10.  Plaintiff was then "warned by a female coworker that Ridgeway was searching for information in [Plaintiff's] work computer," in an effort to terminate her employment.  ECF No. 1 at 10.  Plaintiff's employment was terminated the next day on July 26, 2018.  ECF No. 1 at 10.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  ECF No. 1 at 3, 10-11.  The EEOC found that Plaintiff had not established a Title VII violation.  ECF No. 1 at 7.  However, with regard to the DRP, the EEOC found that "there is reasonable cause to believe that Respondent[3] has violated EEOC laws by requiring its employees to sign an agreement that contains unclear language and appears to require employment disputes to be settled by binding arbitration and discouraging employees from filing a charge of discrimination with the EEOC."  ECF No. 1 at 8.  Plaintiff then filed the present action.

---

[3] Plaintiff's EEOC complaint lists Continuum as the Respondent.

**DISCUSSION**

**I.     Defendant's Motion to Compel Arbitration**

Defendant asserts that Plaintiff agreed to the DRP and is thus precluded from bringing her Title VII claims in court.  ECF No. 7-5 at 4.  Defendant further argues that the threshold issue of whether the parties agreed to arbitrate in the first place should also be submitted to arbitration. ECF No. 19 at 1-2, 6-8.

Plaintiff makes several arguments against the enforceability of the DRP: (1) Plaintiff did not actually complete the Onboarding Documents and is therefore not bound by the DRP; (2) some of Plaintiff's claims are not covered by the DRP; (3) the EEOC's finding that the DRP may have violated EEOC laws allows her to bring her claims in court; (4) Defendant has waived its entitlement to arbitration by failing to initiate arbitration prior to Plaintiff filing in court and failing to properly investigate her sexual harassment claims; and (5) Defendant sold its business to another entity, relieving Plaintiff of her obligations under the DRP.  ECF No. 18.  Plaintiff's arguments fail.

**A.     Legal Standard**

When deciding motions to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation and citation omitted).  "[C]ourts consider 'all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,' and draw all reasonable inferences in favor of the non-moving party." *Henricks v. Flywheel Sports, Inc.*, No. 19 Civ. 895 (PGG), 2020 WL 1285453, at *3 (S.D.N.Y. Mar. 18, 2020) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).  "[W]here the undisputed facts in the record require the matter of

arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (quotation and citation omitted).

Defendant bears the initial burden of proving the existence of the arbitration agreement; the burden then shifts to Plaintiff to put the "making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order).

The Federal Arbitration Act ("FAA") provides that "arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Daly v. Citigroup, Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting 9 U.S.C. § 2). "This provision reflects both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017) (quotations and citations omitted). Indeed, "[t]he Second Circuit has stated that it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." *Daly v. Citigroup, Inc.*, No. 16-CV-9183 (RJS), 2018 WL 741414, at *2 (S.D.N.Y. Feb. 6, 2018), *aff'd*, 939 F. App'x 415 (2d Cir. 2019) (quotation and citation omitted).

The parties' dispute is one of arbitrability, that is, whether they have actually submitted Plaintiff's discrimination claims to arbitration. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 327 (S.D.N.Y. 2013). The question "of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, 'questions of arbitrability' could hardly have been clearly and unmistakably given over to an

arbitrator." *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013).

In determining whether Plaintiff's claims are arbitrable, "courts in the Second Circuit generally follow a two-part test, whereby they consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Marciano*, 14 F. Supp. 3d at 327 (quotations and citations omitted).

The Court finds that the parties did enter into a valid agreement to arbitrate and Plaintiff's claims fall within the scope of the agreement. Accordingly, Defendant's Motion to Compel Arbitration is GRANTED.

**B.     Analysis**

Defendant has met its initial burden by producing a copy of the DRP and an agreement to be bound by the DRP bearing Plaintiff's electronic signature in the form of her typewritten name. ECF No. 7-4 at 2-22, 37-40. Plaintiff argues that the agreement to be bound by the DRP was "never disclosed to [her] . . . . [and] [w]as never acknowledged or received." ECF No. 18 at 3. She claims that because a hiring manager for Defendant completed her Onboarding Documents, she was not allowed to review the DRP and "did not acknowledge [it] on [her] own [b]ehalf." ECF No. 18 at 3. Therefore, Plaintiff argues, she never signed the DRP and thus is not bound by the arbitration agreement. Plaintiff has not met her burden.

**1.     The Parties Have a Valid Arbitration Agreement**

"Whether a valid arbitration agreement exists is a question of state contract law." *Bynum v. Maplebear, Inc.*, 160 F. Supp. 3d 527, 534 (E.D.N.Y. 2016) (collecting cases). Plaintiff asserts lack of assent, and thus lack of formation, as a defense to the enforceability of the arbitration

5

agreement.  *See Marciano*, 14 F. Supp. 3d at 328 (applying analysis of state contract law defenses to plaintiff's nonarbitrability claim).

At a minimum, Plaintiff agreed to the DRP when completing her Employment Application on June 13, 2018.  According to the Declaration of Kerri Odle, Defendant's Director of North American Human Resources, Plaintiff had to create an account with a password only she knew in order to fill out the Employment Application.  ECF No. 7-3 at 3-4.  Plaintiff checked a box under the "Policy Consent" section of the Employment Application indicating that she agreed to the terms of the DRP.  ECF No. 7-4 at 24.

When completing the Onboarding Documents the next day on June 14, 2018, Plaintiff alleges she and other applicants experienced "I.T. issues with the application site."  ECF No. 18 at 3.  Plaintiff therefore made an appointment to complete the Onboarding Documents at Defendant's offices, where a hiring manager for Defendant "clicked through" the Onboarding Documents for Plaintiff.  ECF No. 18 at 3.  Thus, Plaintiff did not have an opportunity to review the Onboarding Documents.  ECF No. 18 at 3.

In support of this contention, Plaintiff points to discrepancies between the addresses listed on the Employment Application and the Onboarding Documents, which she attributes to the possibility that Defendant's hiring manager used an autofill function to fill in her brother's address instead of her own, as he was also Defendant's employee at the time.  ECF No. 18 at 3.  Plaintiff also points to the fact that the Onboarding Documents are "signed by name and date only with no social security number."  ECF No. 18 at 3.

The weight of the evidence supports the inference that Plaintiff did agree to the arbitration agreement.  The Onboarding Documents were typewritten on a computer and contain the date and Plaintiff's name typed at the bottom on the "signature" line, which evidences that she signed the

document. *See Savarese v. J.P. Morgan Chase*, No. 16-CV-321 (JFB) (SIL), 2016 WL 7167968, at *4 (E.D.N.Y. Nov. 16, 2016), *report and recommendation adopted*, No. 16-CV-321 (JFB) (SIL), 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016) ("[T]he signature line in the Arbitration Agreement reads: 'Signature: John Savarese Date: 11-Apr-2013.' As Plaintiff's typewritten name is expressly labeled a 'signature,' it logically was intended to constitute as much." (citations to record omitted)).

Additionally, in order to access and sign the Onboarding Documents on June 14, 2018, Plaintiff had to input her "personally-created, private password," to which "[n]o one employed by Conduent, its predecessors, parents, subsidiaries, affiliates, or related companies had access." ECF No. 7-3 at 3-4. Here, Plaintiff would have had yet another opportunity to view the DRP before signing it as "[a]n electronic link to a complete copy of the DRP was provided." ECF No. 7-3 at 4. "Under New York law, [a] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents." *Moise v. Family Dollar Stores of New York, Inc.*, No. 16-CV-6314 (RA), 2017 WL 2378193, at *4 (S.D.N.Y. June 1, 2017) (collecting cases; quotation and citation omitted); *see also Armstead v. Starbucks Corp.*, No. 17-cv-1163 (PKC), 2017 WL 5593519, at *6 (S.D.N.Y. Nov. 17, 2017) (employee who electronically signed arbitration agreement while being guided through electronic documents by manger was "at a minimum, placed on inquiry notice of the Arbitration Agreement, and is therefore bound by its terms").

That Plaintiff had to input a password that she created and only she knew to access the Onboarding Documents is further proof that she in fact signed the DRP. *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) ("[Employee] then signed the [arbitration]

Agreement using this unique password . . . . There is no question of fact: [Employee] signed the Agreement.").

Furthermore, Plaintiff does not appear to dispute that she signed her name by typing it at the bottom of the Onboarding Documents, only that there is no social security number accompanying her name and date. ECF No. 18 at 3. While true, this fact is irrelevant to the existence and validity of Plaintiff's electronic signature. *See Savarese*, 2016 WL 7167968, at *4-*5 (finding typewritten name to be a valid electronic signature and thus finding existence of a valid arbitration agreement).

Accordingly, Plaintiff entered into a valid arbitration agreement.

### 2.     The Dispute is Within the Scope of the Agreement

By signing the agreement to be bound by the DRP, Plaintiff "consent[ed] to the exclusive final and binding resolution by arbitration under the DRP of all disputes (as defined in the DRP) . . . including but not limited to claims of discrimination or harassment . . . [and] unlawful retaliation." ECF No. 7-4 at 37. The DRP defines "disputes" to specifically include, *inter alia*, alleged violations of Title VII of the Civil Rights Act of 1964 and "of any federal, state, or other governmental law" relating to the relationship between applicants and Defendant. ECF No. 7-4 at 7.

A fair reading of this provision puts Plaintiff's claims squarely within the ambit of the arbitration agreement. *See Daly*, 939 F.3d at 421-22 (looking to "plain terms" of the arbitration agreement in finding plaintiff's Title VII claims arbitrable). To the extent Plaintiff complains of Defendant's "faulty" business practices, those non-specific claims are not asserted in her Complaint and are not brought as a cognizable federal claim, even if they are not covered by the DRP. *See* ECF No. 1.

Moreover, even if there was some doubt about the DRP's scope, courts "resolve any doubts concerning the scope of arbitrable issues in favor of arbitrability" and thus "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 421 (quotation and citation omitted). That is not the case here.

### 3. The EEOC's Finding Does Not Invalidate the DRP

As Defendant correctly points out, the EEOC's finding that the DRP may have contained "unclear language" requiring arbitration in contravention of EEOC laws was included in the determination of Plaintiff's complaint pursuant to a now-rescinded EEOC policy. ECF No. 19 at 5-6. Regardless, such a finding from the EEOC has no bearing on the Court's findings with respect to the binding arbitration agreement. *See Savarese*, 2016 WL 7167968, at *8 (finding that EEOC letter does not supersede a binding arbitration agreement). The EEOC's finding does not invalidate the DRP.

### 4. The DRP is Not Void for Defendant's Alleged Failure to Investigate Plaintiff's Claims or to Invoke the DRP Earlier

Plaintiff next contends that because an internal investigation into her sexual harassment claims was "closed without any solid conclusion" and that Defendant did not move to arbitrate Plaintiff's claims prior to Plaintiff filing a federal lawsuit, the DRP is void. ECF No. 18 at 1, 3. This defense, too, fails.

First, the procedure for initiating arbitration proceedings is clearly delineated in the DRP. ECF No. 7-4 at 14. Either Plaintiff or Defendant could have initiated arbitration by "serving a written request to initiate such proceedings on [the American Arbitration Association] or [Judicial Arbitration and Mediation Services] and tendering the appropriate filing fee." ECF No. 7-4 at 14. Additionally, Plaintiff could have initiated arbitration by "serving a written request to initiate such

proceedings on the Company's Dispute Resolution Plan Administrator." ECF No. 7-4 at 14. The DRP is not void because the non-aggrieved party allegedly did not initiate arbitration proceedings.

Second, Plaintiff states no facts concerning the interplay between a human resources investigation and arbitration proceedings. However, it appears from the DRP that, irrespective of any internal investigation, Plaintiff had only to make a written request to initiate arbitration proceedings to Defendant's DRP Administrator. Plaintiff states no facts as to whether she followed this process.

Accordingly, the DRP is not void because of a closed internal investigation or for not having been invoked earlier.

### 5. Plaintiff Remains Bound to the DRP After Sale of Defendant's Business

Defendant confirmed that its business assets were sold to Continuum on February 4, 2019. ECF No. 19 at 4. Defendant argues, however, that the sale "has no bearing on whether the DRP applies to Plaintiff's claims against Conduent, particularly given that the DRP even applies to claims against Conduent's successors and assigns." ECF No. 19 at 4. Indeed, the DRP does apply to Defendant and its "successors and assigns," which would include Continuum. *See* ECF No. 7-4 at 7. Accordingly, despite the sale of Defendant's business to Continuum, Plaintiff remains bound by the DRP.

Because the parties have a valid arbitration agreement whose scope encompasses the claims at issue here, and Plaintiff's other defenses against enforceability fail, Defendant's Motion to Compel Arbitration, ECF No. 7, is GRANTED.

**II.     Plaintiff's Motion for a Default Judgment**

Plaintiff brings a Motion for Default Judgment based on Defendant's alleged failure to timely respond to the Complaint. ECF No. 18 at 1. Defendant claims it understood that Plaintiff

had granted it an extension of time to respond to Plaintiff's Complaint and complied with that extended deadline. ECF No. 19 at 2-3. Because the Court has already found that Plaintiff's claims are subject to arbitration, Plaintiff's Motion for Default Judgment. ECF No. 6, is DENIED.

In any event, Plaintiff failed to follow the proper procedure to obtain a default judgment. *See* Fed. R. Civ. P. 55; *Gasser v. Infanti Int'l, Inc.*, No. 03 CV 6413 (ILG), 2008 WL 2876531, at *6 n.6 (E.D.N.Y. July 23, 2008); *Brown v. Marshall*, No. 08-CV-12F, 2009 WL 1064189, at *1 (W.D.N.Y. Apr. 20, 2009). First, when a defendant has "failed to plead or otherwise defend" an action against it, a plaintiff must secure an entry of default from the clerk via an affidavit or other showing. Fed. R. Civ. P. 55(a). Then, the party seeking a default judgment must apply to the court. Fed. R. Civ. P. 55(b)(2). The Court may set aside the clerk's entry of default against a defendant under Fed. R. Civ. P. 55(a) for good cause. Fed. R. Civ. P. 55(c). Default judgments are "generally disfavored and are reserved for rare occasions." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

The entry of default by the Clerk is a mandatory pre-condition to seeking a default judgment from the Court. *See, e.g.*, *Perkins v. Napoli*, No. 08-CV-6248 CJS, 2010 WL 455475 at * 1 (W.D.N.Y. Feb. 4, 2010). It is undisputed that Plaintiff did not seek the entry of a default and consequently the Clerk did not enter default against Defendant. Therefore, on this basis alone, Plaintiff's motion for default judgment would fail.

Even if the Clerk of Court had entered default, the Court would find that good cause exists to set aside such a default. Good cause is determined via three criteria: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013).

A default is "willful" when it is deliberate and not brought on by outside factors. *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015); *Guggenheim Capital, LLC*, 722 F.3d at 455. A defense is meritorious if it is "more than conclusory." *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005); *see Bricklayers*, 779 F.3d at 187. Finally, prejudice exists where delay will "thwart [the non-defaulting party's] recovery or remedy[,] . . . result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Green*, 420 F.3d at 110 (quotation and citation omitted).

Even if Plaintiff had followed the proper procedure, Defendant has shown good cause to set aside a Clerk's would-be entry of default. First, the default was not willful. In part due to docketing errors, there was some confusion as to whether service of process had actually been effectuated and thus confusion as to Defendant's deadline to respond to Plaintiff's Complaint. ECF No. 7-1 at 2. Defendant initially understood its deadline to respond to be January 9, 2020, and sought an extension of that deadline from Plaintiff "in an abundance of caution" while the service of process issue was resolved. ECF No. 7-1 at 1-2. The parties exchanged a series of emails that were not manifestly clear on what new, if any, response date they agreed to. *See* ECF No. 7-2 at 2-17. Defendant's confusion was understandable.

Second, Defendant has presented more than conclusory defenses to the action, as the Court has already found that Plaintiff's claims may not be brought in this Court due to a binding arbitration agreement.

Third, regardless of whether an extension was actually granted, Defendant responded one week after its initial deadline. *See* ECF No. 7. A one-week delay in responding is not prejudicial to Plaintiff here.

Accordingly, Plaintiff's Motion for Default Judgment is DENIED.

### III.     Plaintiff's Motion to Appoint Counsel

Although there is no constitutional right to appointed counsel in civil cases, "a plaintiff may apply to the Court to appoint counsel for him or her, under Title VII's own provision for appointment of counsel." *De Luca v. Barreto*, No. 04Civ.8133 (KMW)(DF), 2005 WL 1949516, at *1 (S.D.N.Y. Aug. 12, 2005) (citing 42 U.S.C. § 2000e-5(f)(1); collecting cases).

In determining whether to appoint counsel, courts consider the same factors as in an application for appointment of counsel under 28 U.S.C. § 1915(e) for indigent parties. *See id.* at *2 (applying § 1915(e) factors). Those factors include whether the indigent's claims seem likely to be of substance; the indigent's ability to investigate the crucial facts; whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; the indigent's ability to present the case; the complexity of the legal issues; and any special reason why appointment of counsel would be more likely to lead to a just determination. *De Luca*, 2005 WL 1949516, at *2; *see Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).

After considering these factors, the Court finds that the appointment of counsel is not warranted. The issues in this case are not complex. Plaintiff's submissions, including filing her own motions and responses to Defendant's motion, indicate the she understands the relevant issues and can adequately present her own claims. *See* ECF Nos. 1, 6, 17. Moreover, there are no special reasons that would favor the appointment of counsel to represent Plaintiff at arbitration. Plaintiff's motion to appoint counsel, ECF No. 17, is DENIED.

**IV.     Service of Process on Continuum and Ridgeway**

Because Plaintiff's claims must be brought through arbitration, that Defendants Continuum and Ridgeway have not been served in the present action is of no moment, as claims against them must also be brought through arbitration according to the DRP. ECF No. 7-4 at 7 (defining "Company," a party subject to the DRP, as all of its employees, parent corporations, and its successors and assigns).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration, ECF No. 7, is GRANTED; Plaintiff's Motion for a Default Judgment, ECF No. 6, is DENIED; and Plaintiff's Motion to Appoint Counsel, ECF No. 17, is DENIED. The parties are directed to proceed through arbitration in the manner set forth in the DRP. Defendant is directed to file a report on the status of the arbitration proceeding when it concludes or by July 20, 2020, whichever is earlier.

IT IS SO ORDERED.

Dated: April 17, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court Judge